## BALTIMORE & OHIO RAILROAD CO. ET AL. *v.* UNITED STATES ET AL.

No. 258.   Argued January 7, 1953.—Decided March 16, 1953.

*Robert H. Bierma* argued the cause for appellants. With him on the brief were *Richmond C. Coburn, Frank H. Cole, Jr., Leo P. Day, James B. Gray* and *Toll R. Ware.*

*Daniel M. Friedman* argued the cause for the United States and the Interstate Commerce Commission, appellees.   With him on the brief were *Solicitor General Cummings, Acting Assistant Attorney General Clapp, Marvin E. Frankel* and *Edward M. Reidy.*

*Frank A. Leffingwell* submitted on brief for the Texas Citrus and Vegetable Growers and Shippers, appellee.

MR. JUSTICE BLACK delivered the opinion of the Court.

The appellant railroads brought this action in a United States District Court to set aside a rate order of the Interstate Commerce Commission. The order prescribed maximum carload rates for carrying certain kinds of fresh vegetables. The rates were charged to be "confiscatory" and therefore in violation of the Due Process Clause of the Fifth Amendment. The sole basis for this charge was an allegation that if put in effect the rates would produce less money than it would cost the railroads to carry the particular vegetables covered by each rate. Denying that a commodity rate violates due process *merely* because it is noncompensatory, the Commission moved to dismiss the complaint on the ground that proof of everything the complaint alleged would not justify invalidation of the order. On this ground, and without reaching another Commission contention on which the District Court relied, we hold that the case was properly dismissed by that court.[1]

---

[1] The District Court dismissed because the railroads had not tendered any issue of confiscation or offered any proof of transportation costs until after the Commission had finished its hearings, made findings and entered its rate order. 105 F. Supp. 631. For this reason the District Court declined the railroads' request to hear evidence of transportation costs, a procedural course approved in *Baltimore & O. R. Co.* v. *United States,* 298 U. S. 349, or to hold the case for remand to the Commission for it to make a preliminary appraisal of the facts in line with the suggestion in *New York* v. *United States,* 331 U. S. 284, 334–336. Relying on the Court's opinion in the *Baltimore & Ohio* case, *supra,* the railroads here contend that dismissal because of their delay in raising the issue before the Commission deprived them of a constitutional right to have a judicial determination of their Fifth Amendment contention. The Commission's answer to this contention is a request that we re-examine the *Baltimore & Ohio* case, abandon the constitutional principles announced by the majority

There is and has been no claim that the challenged rates will make any one of the complaining railroads operate its entire business at a loss, or even carry all fresh vegetables at a loss. The carload rates prescribed are but minor alterations in a vast, complex network of rates that apply to fresh vegetable shipments throughout the Nation. One of the two rates applies only to carload shipments of carrots with tops, the other to carload shipments of a limited group of other fresh vegetables such as string beans, lettuce and parsnips. And both rates relate only to shipments from points in Texas to points in some but not all of the other states.

Such adjustments of rates among vegetables as the Commission here made would appear to be but normal, run-of-the-mine regulations and the fixing of a cheaper transportation rate for one vegetable than for another may well serve an important public need. So long as a railroad is not caused by such regulations to lose money on its over-all business, it is hard to think that it could successfully charge that its property was being taken for public use "without just compensation." [2] And apparently the railroads rely not on the just compensation but on the Due Process provision of the Fifth Amendment. This appears from their complaint and the cases cited to support their contention. Chief reliance is placed on *Northern Pacific R. Co.* v. *North Dakota,* 236 U. S. 585, and a companion case decided the same day, *Norfolk & W. R. Co.* v. *West Virginia,* 236 U. S. 605. Both cases involved state statutes fixing rail-

---

there and apply the concurring minority views to the facts of this case. Because there is a more appropriate ground for decision we assume, without deciding, that the confiscation issue here was raised in time.

[2] The Fifth Amendment provides in part: "No person shall . . . be deprived of . . . property, without due process of law; nor shall private property be taken for public use, without just compensation."

road rates, one on coal and one on passengers. Both were found to be noncompensatory. Both were held violative of the Due Process Clause of the Fourteenth Amendment. In both the ground was that the rates were "unreasonable" and "arbitrary." The Court was careful to point out and emphasize that there was nothing in the records of those cases to show that there were "reasonable" grounds on which to justify imposing noncompensatory rates on the railroads. It would not be possible to hold that the vegetable rates here challenged are the result of unreasonable or arbitrary Commission action.

The history of regulation of fresh vegetable transportation rates from the south and southwest shows the difficulties the Commission has had in that field. Much of that history can be found in the Commission reports cited below.[3] Not only has the Commission had to consider conflicting rate claims as between shippers and carriers; it has also had to resolve disputes over such questions among the carriers themselves. The present rate order is but one of a long series of Commission orders designed to correct defects and injustices that develop from time to time in the general fresh vegetable rate pattern. Among the factors considered by the Commission in fixing these rates have been these: value of the vegetable; comparison of vegetable values; comparisons with rates on the same vegetables in different sections of the country; comparisons with rates on commodities other than vegetables; special characteristics of some vegetables that

---

[3] 279 I. C. C. 671 and 284 I. C. C. 206 are the original and rehearing reports on the present rate order. Other reports on the system of vegetable rates are *Southwestern Vegetable Case,* 200 I. C. C. 355, 209 I. C. C. 606, 214 I. C. C. 63; *Southeastern Vegetable Case,* 200 I. C. C. 273; *Transcontinental Rates and Estimated Weights on Vegetables,* 270 I. C. C. 665; *Estimated Weights on Lettuce from the Southwest,* 276 I. C. C. 647.

add to or subtract from expense of transportation; perishability; claim hazards of the carrier as between different vegetables; competing truck rates; and possible harmful effects of rates on vegetable prices and sales.

This mere sample of factors that have to be considered in rate cases demonstrates the absolute necessity for considerable flexibility in rate making. For not only are fair decisions as to vegetable rates vital to the welfare of farmers and whole sections of the country; the health and well-being of the Nation are involved. Moreover, Commission power to adjust rates to meet public needs is implicit in the congressional plan for a nationally integrated railroad system. *United States* v. *Lowden,* 308 U. S. 225, 230; *The New England Divisions Case,* 261 U. S. 184; *Railroad Commission of Wisconsin* v. *Chicago, B. & Q. R. Co.,* 257 U. S. 563, 583–586. And so long as rates as a whole afford railroads just compensation for their over-all services to the public the Due Process Clause should not be construed as a bar to the fixing of noncompensatory rates for carrying some commodities when the public interest is thereby served.

*Affirmed.*

MR. JUSTICE CLARK took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE concurs, dissenting.

*Baltimore & Ohio R. Co.* v. *United States,* 298 U. S. 349, established a rule of procedure that entitles a carrier to raise the issue of confiscation in judicial proceedings for review of an order of the Commission, even though it has not tendered the issue in the hearings before the Commission but only on a petition for reconsideration after the order was issued. That rule of procedure was challenged by Mr. Justice Brandeis in an opinion in which

three other Justices joined. *Id.*, p. 381. There has been much discussion in the briefs and on oral argument concerning the wisdom and propriety of that rule. Whatever may be concluded on the merits, it is a rule on which litigants are entitled to rely until and unless it is overruled. Appellants properly relied on it here. After the Commission entered this rate order, the appellants filed a petition for reconsideration, offering to prove that the costs of operation under the new rates would exceed the revenues. The District Court therefore erred when it ruled that evidence bearing on the issue of confiscation was inadmissible in these review proceedings because it had not been tendered in the hearings before the Commission. 105 F. Supp. 631.

The Court, without deciding that issue, assumes that the tender of proof on the issue of confiscation was timely, but concludes that even if a confiscatory rate were established, the carriers would be entitled to no relief. That ruling is, in my view, quite unjustified on the record before us.

Appellants offer to prove that their costs of handling the traffic are greater than the revenues which the traffic will produce under the new rates. We must assume under the Court's ruling that that is the fact. What justification then is there for the Commission forcing the carriers to haul the traffic at less than cost?

One will read the record in vain for any clue. The report of the Commission is largely a hodge-podge of statistics dealing with rates on vegetables from Texas, California, Arizona, and New Mexico to eastern and northern points. The Commission was apparently bent on leveling down some of the rates out of Texas to make them more nearly equal to those out of California, Arizona, and New Mexico. The reasons are not disclosed.

There is no suggestion or intimation that the vegetable markets were suffering by reason of the Texas rates.

Texas growers and shippers complained that the rate structure was unduly prejudicial to them and unduly preferential to growers and shippers in California, Arizona, and New Mexico. The record shows that the former were in competition with the latter in various markets. But the Commission held that there was "no persuasive evidence" that the Texas rates had an adverse effect on the Texas growers and shippers. The Commission in other words refused to find that the rates were unduly prejudicial under § 3 of the Interstate Commerce Act. 49 U. S. C. § 3.

The Commission did, however, find that the Texas rates were unreasonable; and it proceeded to prescribe "reasonable" rates pursuant to § 15 (1) of the Act.

Can a confiscatory rate be a "reasonable" rate under the statutory and constitutional system within which the Commission operates? It is incredible to me that Congress used "reasonable" in such an odd and unusual sense. The history of rate-making, reviewed in *Northern Pacific R. Co.* v. *North Dakota,* 236 U. S. 585, denies it. Perhaps there will be exceptions. Perhaps dire emergencies will arise, making it necessary in the public interest to compel the transportation of certain commodities at less than cost. But certainly such a step should not be taken without appropriate findings showing why the confiscatory rate is a "reasonable" one.

This controversy on the merits may be insubstantial. The proof of confiscation may fail. It may be established, as one of the appellees contends, that the carriers since 1940 have voluntarily published rates yielding less than half the revenue per car to be yielded by the new rates. But the issues tendered should be tried. If we assume that the prescribed rates are confiscatory, it is, in my view, impossible to say on the present record that they are "reasonable."