**INDIANA HARBOR BELT RAILROAD COMPANY,**
Plaintiff-Appellee,

v.

**UNITED STATES of America et al.,**
Defendants-Appellants.

Nos. 74–1031, 74–1101.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 8, 1974.

Decided Feb. 11, 1975.

Certiorari Denied June 23, 1975.

See 95 S.Ct. 2656.

James R. Thompson, U. S. Atty., Gary L. Starkman, Asst. U. S. Atty., Chicago, Ill., Hanford O'Hara, I.C.C., Washington, D. C., Martin M. Lucente, Chicago, Ill., William Kanter, Dept. of Justice, Washington, D. C., for defendants-appellants.

Anna M. Kelly, Chicago, Ill., for plaintiff-appellee.

Before MARIS,* HASTINGS and TONE, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal from a judgment of the district court setting aside an order of the Interstate Commerce Commission made by its Division 2. Charges on Movements of Privately Owned Cars To and From Repair Shops on the Line of Indiana Harbor Belt R. R., 1972, 341 I.C.C. 57.

The controversy out of which the case arose has to do with the applicability of Freight Tariff 325–U, I.C.C. No. 1160, of

* Of the Third Circuit, sitting by designation.

Indiana Harbor Belt Railroad Company, herein referred to as IHB, to certain empty car movements of the defendants, General American Transportation Corporation and North American Car Corporation, herein referred to as the Car Companies. IHB, a belt carrier, operates a short line of railroad in the Chicago, Illinois, switching district and performs various types of switching movements for its 30 connecting line-haul carriers as well as for industries located on its tracks and also switches empty cars to and from seven repair facilities also located on its tracks. The controversy began when IHB sought to collect certain charges from the Car Companies under Tariff 325–U. IHB claimed that it had previously unaccountably failed to bill and collect charges for the movement of empty tank cars owned by the Car Companies into and out of repair shops, although it had collected from them charges under that tariff for the similar movement of empty freight cars other than tank cars.

The Car Companies are manufacturers of freight cars which sell or lease such cars to shippers moving their goods over IHB and other lines and which also own three of the seven repair shops on the IHB line. They refused to pay the charges, denying the applicability of IHB Tariff 325–U not only to the tank car movements for which payments had not been made but also to the movements into and out of repair shops of other empty freight cars for which they now claimed they had mistakenly paid in the past. To enforce its claims IHB brought two separate suits, one against each Car Company,[1] in the district court to recover the amounts which it claimed as charges for switching empty tank cars to and from repair shops during the prior three years. The Car Companies thereupon counterclaimed, as defendants in

their respective suits, for the sums which they had previously paid to IHB for the switching of empty freight cars other than tank cars to and from repair shops.[2]

Recognizing the primary jurisdiction of the Interstate Commerce Commission in this matter of applicability of rates, the district court, upon motion of the Car Companies, ordered a stay of its proceedings to allow either party to apply to the Commission for a ruling on the applicability and the lawfulness, if applicable, of IHB Tariff 325–U to the movements in question of defendants' cars. Accordingly, the Car Companies jointly petitioned the Commission for a declaratory order under the Administrative Procedure Act, 5 U.S.C. § 554, that the movements of empty tank cars and other empty private freight cars were subject to items of Agent B. B. Maurer's Mileage Tariff 7, I.C.C. No. H–32, generally providing that such movements are to be made free of charge and that IHB's interpretation of Maurer's Mileage Tariff 7 permitting revenue billing on the empty movements of private freight cars to repair shops would result in an unreasonable, unjust and discriminatory practice in violation of the Interstate Commerce Act.

The purpose of Maurer's Mileage Tariff 7[3] will be briefly explained. Ordinarily, railroads furnish the cars which shippers require to transport their merchandise. However, a shipper may use his own cars for this purpose or lease them from a private car company. Since the freight rates charged by the railroads to the shipper for moving his goods include a cost factor for supplying freight cars, such factor including car acquisition, maintenance and movement costs, the railroads should reimburse the shipper or car owner a reasonable amount when the shipper uses other than railroad cars. Maurer's Mileage

---

1. Indiana Harbor Belt R.R. v. General American Transportation Co., N.D.Ill.1970, Civil Action No. 70 C 491, and Indiana Harbor Belt R.R. v. North American Car Corp., N.D.Ill. 1970, Civil Action No. 70 C 492.

2. The Car Companies also counterclaimed for sums which they paid for the movement of

tank cars when IHB threatened to discontinue the service in question if payment were not made.

3. Maurer's Mileage Tariff 7 was cancelled and replaced January 1, 1971 by Maurer's Mileage Tariff 7–B, I.C.C. No. H–43.

Tariff 7 sets forth the rules governing the handling of and the mileage allowances to be paid on cars of private ownership by railroads party to the tariff, which include IHB and virtually all other American railroads. The purpose of these rules and allowances is to offset the charge to which we have referred which is included in the railroad freight rates for the use of carrier-owned cars. The offset is accomplished by a mileage allowance, paid by the railroad to the shipper using private cars or paid directly to the private car owner or lessor, for all miles traversed whether the car is empty or loaded except that if the aggregate of the empty miles exceeds the aggregate of loaded miles in an accounting period, the excess is subject to certain charges. This last provision is the so-called equalization rule set forth in items 120 and 260 of Maurer's Mileage Tariff 7. Subject to certain exceptions and to the equalization rule, items 120 and 260, however, generally provide that empty cars be moved free of charge.

The relevant portions of items 25, 30 and 120 of section 1 of Maurer's Mileage Tariff 7 are set out in the margin.[4] Section 1 deals exclusively with tank cars.

Section 2 dealing with freight cars other than tank cars contains in items 140, 145 and 260 provisions substantially identical in content with items 25, 30 and 120, respectively, of section 1. The switching charge imposed by IHB Tariff 325–U on the movement of empty freight cars which IHB is seeking to collect from the Car Companies is stated in the tariff to apply to "Railway Equipment on own wheels, viz.: Empty Freight Cars."

Upon submission of written testimony and briefs under its rules of modified procedure, the Commission referred the proceeding before it, to which IHB was made respondent, to a hearing examiner. The examiner considered the relevant portions of Maurer's Mileage Tariff 7 and concluded that the IHB charges under its Tariff 325–U for the movements of the empty cars in question into and out of repair shops fell within the exceptions stated in items 30(a) and 145(a) of the Mileage Tariff, were applicable to those movements and were not unreasonable or unlawful. In resolving the "slight conflict" between two "specific" provisions of the Mileage Tariff, items 30(a) and 120, in favor of IHB, the examiner stated that the possible ambigui-

4. Item 25

APPLICATION

\* \* \* \* \* \*

Except as otherwise provided herein, these rules govern the payment of mileage allowances and equalization of mileage on tank cars when used by railroads, parties to this tariff, individually (or jointly where specifically provided herein), for transportation over their lines, including the movement to shops for repairs or reconditioning or returning therefrom, as follows:

\* \* \* \* \* \*

Item 30

EXCEPTIONS TO APPLICATION AND RULES

\* \* \* \* \* \*

The rules and mileage allowances published herein, will not apply on the following:

(a) *Movements of empty cars for which charges are assessed under tariff authority.*

\* \* \* \* \* \*

Item 120, Rule 3

EQUALIZATION OF MILEAGE ON TANK CARS

Except as otherwise provided in Items 25 and 30 (Application and Exceptions to Appli-

cation), tank cars will be moved empty without charge at the time movement is made . . . subject to the following conditions:

(a) Except as provided in Notes 2 and 3 below, should the aggregate empty mileage of cars bearing any of the reporting marks assigned to any one person or company at the end of each calendar year, or at the close of any such yearly period as may be mutually agreed upon, exceed the aggregate loaded mileage on the lines of such railroads, individually (or jointly when mileage accounts are computed jointly), such excess must be paid for by the person or company to whom the reporting marks are assigned, either by an equivalent loaded mileage during the succeeding six (6) months, or at applicable mileage rates named in the Consolidated Freight Classification, in the Uniform Freight Classification or in State Classification tariffs where *State rates apply, or other applicable tariffs,* without minimum, plus an amount equivalent to the mileage allowance that has been paid by the railroads on such excess empty mileage.

\* \* \* \* \* \*

ty created by the language of the Mileage Tariff was removed by consideration of the particular circumstances that "IHB does not receive any share of the line haul assessed on loaded movements passing over its line." The examiner also gave weight to the fact that IHB Tariff 325–U included a switching charge for empty car movements.

The Car Companies filed exceptions to the examiner's recommendations and the Commission, acting through its Division 2, thereafter issued a final report and order unanimously rejecting the report and order recommended by the examiner. The Commission concluded that item 25 of Maurer's Mileage Tariff 7, which specifically included the movement in question making the item 120 general provisions expressly applicable to car movements to shops for repairs, took precedence over the "vague and ambiguous" exceptions provision of item 30(a), and further that the language of IHB Tariff 325–U—"Railway Equipment on own wheels, viz.: Empty Freight Cars" —was not specific enough as to the kind of empty car movements covered to supplant, under the exception in item 30(a), the very specific language of item 25— "tank cars when used by railroads . . for transportation over their lines, including the movement to shops for repairs or reconditioning or returning therefrom." The Commission took the view that the broad interpretation required by IHB's position that the mileage charge imposed by its Tariff 325–U fell within the exception of 30(a) would, when taken to its logical conclusion, result in the exception nullifying the mileage allowance tariff generally.

Upon the denial by the Commission of the petition of IHB to reconsider the order holding IHB Tariff 325–U inapplicable, IHB filed a third action in the district court, this one to set aside the Commission's determination. IHB complained that the Commission's order was arbitrary and capricious, that it was based on a misinterpretation of the law and evidence, that it conflicted with the plain language of the tariff items in-

volved, that it violated the Interstate Commerce Act, in that it compelled the charging of discriminatory rates and also in that it compelled IHB to furnish free transportation since IHB does not participate in line-haul carrier freight rates, and that in the latter respect it violated the Fifth Amendment of the Constitution by ordering a confiscatory taking of the IHB property without due process. The Car Companies intervened as defendants, and the district court consolidated the three cases, since it concluded that its decision in the third suit would be dispositive of the issues in the two earlier suits against the Car Companies. The district court subsequently entered a judgment setting aside the determination of the Commission and dismissing the two suits brought by IHB against the Car Companies without prejudice to their later reinstatement. 1973, 368 F.Supp. 904. From the portion of the judgment which set aside the determination of the Commission appeals were taken by the Car Companies at our No. 74–1031 and by the Commission and the United States at our No. 74–1101.

The district court arrived at its conclusions by first noting that the practices of both IHB and the Car Companies in making and paying charges for empty car movements were inconsistent with their present claims. The court discounted the application of various rules of tariff interpretation which were urged upon it as either not dispositive in the circumstances of the case or as cancelling each other out. The court did concede that "this fact situation—at least as explored superficially—is one in which good judgment could favor either contestant", but proceeded to review the Commission's order "the Items in suit in the larger perspective of their interrelationship to the entire scheme of railroad charges and tariffs." 368 F.Supp. at 907. The court adopted the view of the Commission's examiner that the particular circumstances of IHB's situation should weigh the otherwise balanced scales in its favor. In the court's view, since the repair movements of carrier-

owned cars over another carrier's tracks have been held by the Commission to be subject to charges, Use of Private Passenger Train Cars, 1929, 155 I.C.C. 775, the Commission's rejection of an interpretation of the tariffs which would allow IHB to assess a charge for repair movements of privately owned freight cars, would precipitate a violation of the anti-discriminatory provisions of section 2 of the Act.

 We think, however, that the district court in reaching its decision took into consideration matters not properly before it and that on the issue which was properly before it, the validity of the interpretation by the Commission of the tariffs involved, the court erred. We are satisfied, in particular, that it was not within the province of the district court, in reviewing the determination of the Commission on this issue, to consider *ab initio* the question whether the application of the tariffs as interpreted by the Commission, would result in unlawful discrimination in violation of section 2 of the Interstate Commerce Act. 49 U.S.C.A. § 2. For it is settled that primary jurisdiction for determining whether rate charges are discriminatory lies with the Interstate Commerce Commission and not with the courts. United States v. Wabash R.R., 1944, 321 U.S. 403, 410–411, 64 S.Ct. 752, 88 L.Ed. 827. The inquiry involves the exercise of discretion in a technical field requiring the expertise of the Commission, whether it is conducted to determine if a party in the past has been wronged, a judicial function, or to determine what rate or practice shall be deemed reasonable in the future, a legislative function. Great Northern Ry. v. Merchants Elevator Co., 1922, 259 U.S. 285, 291, 42 S.Ct. 477, 66 L.Ed. 943. That a body should exist fitted to make a primary determination from the facts as to whether a preference or discrimination obtains was one of the reasons for the creation of the Commission. United States v. Chicago Heights Trucking Co.,

1940, 310 U.S. 344, 352, 60 S.Ct. 931, 84 L.Ed. 1243. Thus the courts must enforce a rate, even though alleged to be discriminatory, until the matter of discrimination has first been decided by the Commission.[5] Texas & Pacific Ry. v. Abilene Cotton Oil Co., 1907, 204 U.S. 426, 439, 27 S.Ct. 350, 51 L.Ed. 553. Indeed one of the purposes of the Interstate Commerce Act is to provide an effective means to redress unjust discrimination through the publication of rates and their undeviating application subject to review and approval by the Commission.

 Nor was it proper for the district court to review the soundness of the Commission's determination and its conformity with the policy and principles laid down in section 1 of the Interstate Commerce Act. 49 U.S.C.A. § 1. Georgia Public Service Commission v. United States, 1931, 283 U.S. 765, 775, 51 S.Ct. 619, 75 L.Ed. 1397; I.C.C. v. Martin Bros. Box Co., 9 Cir. 1955, 219 F.2d 811, cert. den. 350 U.S. 823, 76 S.Ct. 50, 100 L.Ed. 735. The courts may not substitute their judgment on these questions for the findings and conclusions of the Commission. United States v. New River Co., 1924, 265 U.S. 533, 542, 44 S.Ct. 610, 68 L.Ed. 1165.

 We come then to the issue which was properly before the district court, namely, whether the Commission erred in holding that the provisions of IHB Tariff 325–U fixing a rate for the movement of empty freight cars on their own wheels superseded under the general exception of items 30(a) and 145(a) of Maurer's Mileage Tariff 7 the specific provisions of items 25, 120, 140 and 260 of that tariff that empty tank and other freight cars will be moved without charge to shops for repairs and return therefrom. We think that the reconciliation of these conflicting tariffs and the proper scope of each in view of the other was a matter peculiarly within the competence of the Commission to determine

5. The Commission's decision on this question is, of course, subject to judicial review.

Pennsylvania R.R. v. United States, 1960, 363 U.S. 202, 205, 80 S.Ct. 1131, 4 L.Ed.2d 1165.

in the light not only of their language but also of all the customs, practices and other underlying facts involved. United States v. Western Pacific R.R., 1956, 352 U.S. 59, 65–66, 68, 77 S.Ct. 161, 1 L.Ed.2d 126. To the Commission's determination of such a question the courts will give great weight. United States v. North Carolina Granite Corp., 4 Cir. 1961, 288 F.2d 232, 235.

The district court recognized that its scope of review was narrow but nonetheless reversed the Commission on the basis of the court's view of the proper operation of the tariff provisions involved in the larger perspective of their interrelationship to the entire scheme of railroad charges and tariffs, and of its conclusion that the Commission's interpretation would precipitate discriminatory practices in violation of section 2 of the Interstate Commerce Act. The court conceded that if one were limited to the face of the record alone good judgment could favor either view of the impact of the tariffs upon each other. With this conclusion we agree and we think that the court should have so limited its consideration of the Commission's order.

The conclusion of the district court to which we have just referred makes it unnecessary for us here to review in any detail the record or the opinion of the Commission. We may point out, however, that the Commission referred to the billing and payment practices of private car owners and carriers under tariffs similar to IHB Tariff 325–U, to the

question whether the empty freight cars on their own wheels described in Tariff 325–U were to be considered as commodities or as instrumentalities of commerce, and the meaning of the word "assessed" in items 30(a) and 145(a) of Maurer's Mileage Tariff 7. The Commission largely based its decision upholding the applicability of items 120 and 260 of that tariff on the canon of construction that a specific tariff rule takes precedence over a more general one, especially where, as here, the application of the more general rule would nullify the tariff scheme involved in the specific rule. See National Van Lines, Inc. v. United States, 7 Cir. 1966, 355 F.2d 326, 332. This interpretation of the tariffs was consistent with the rule of construction that ambiguous tariff language must be construed in favor of the shipper and against the carrier. Calcium Carbonate Co. v. United States, S.D.Ill.1966, 256 F.Supp. 99, 102–103.

 But little need be said of the claim of IHB that the Commission's order, by requiring it to perform a free service, has authorized the taking of its property without just compensation in violation of the Fifth Amendment to the Constitution. For IHB did not make the showing as to its over-all operations which was necessary to enable the court to consider such a claim. Baltimore & Ohio R.R. v. United States, 1953, 345 U.S. 146, 150, 73 S.Ct. 592, 97 L.Ed. 912.

Reversed.