JAMES J. SHEERAN, COMMISSIONER OF INSURANCE OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. NATIONWIDE MUTUAL INSURANCE COMPANY, INC., AND NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, INC., CORPORATIONS OF THE STATE OF OHIO, DEFENDANTS-APPELLANTS.

Argued May 9, 1979—Decided July 17, 1979.

Mr. *Eugene M. Haring* argued the cause for appellants (*Messrs. McCarter & English,* attorneys; *Mr. Ronald J. Hedges,* on the briefs).

Mr. *William L. Dill, Jr.* argued the cause for *amicus curiae* National Association of Independent Insurers (*Messrs. Stryker, Tams & Dill,* attorneys).

Mr. *Stephen Skillman,* Assistant Attorney General, argued the cause for respondent (*Mr. John J. Degnan,* At-

torney General of New Jersey, attorney; *Mr. Peter D. Piz-zuto,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

PASHMAN, J. The main issue presented in this case is whether a company licensed to sell automobile insurance in this state may, consistent with the New Jersey Automobile Reparation Reform Act (No-Fault Act), *N. J. S. A.* 39:6A–1 *et seq.,* and its accompanying regulations, *N. J. A. C.* 11:3–1.1 *et seq.,* refuse to renew all policies issued in prior years without relinquishing its license. The Commissioner of Insurance, relying upon *N. J. S. A.* 39:6A–3 and *N. J. A. C.* 11:3–8.1, contends that it may not. Defendants both question the Commissioner's interpretation of the No-Fault Act and raise various defenses of constitutional dimension.

Defendants Nationwide Mutual Insurance Company (Nationwide) and Nationwide Mutual Fire Insurance Company (Nationwide Fire) are corporations licensed to sell various types of insurance in New Jersey. The former provides coverage for losses sustained as a result of automobile accidents, while the latter issues fire and homeowners' policies. Due to continuing business losses, in the fall of 1977 defendants decided to discontinue the sale of casualty and fire insurance in this state. On October 13, 1977 a letter to this effect was sent to their agents and policyholders. The letter stated that the companies would honor all contractual commitments previously entered into, including renewal guarantees contained in outstanding policies, but that no new commitments would be undertaken.

On November 30, 1977 the Commissioner and the officers of Nationwide gathered at an informal meeting convened to assess the propriety of defendants' actions in this regard. Also in attendance were representatives of Nationwide's independent insurance agents and the chairman of the New Jersey Assembly's Committee on Insurance. Defendants outlined their proposed withdrawal plan, including the steps

that would be taken to assure that they would not run afoul of statutes relating to the renewal rights of terminated agents, *see N. J. S. A.* 17:22–6.14a. Counsel for defendants emphasized that although the companies would cease to write automobile and fire insurance policies in New Jersey, they did not intend to surrender their licenses to do business in the state. Rather, they would retain these licenses in order to facilitate the servicing of their national accounts. The Commissioner took the position that under the No-Fault Act, defendants could not both refuse to renew existing policies and fail to relinquish their licenses.

After attempting unsuccessfully to amicably settle his dispute with defendants, the Commissioner instituted the present suit in the Chancery Division. *See N. J. S. A.* 17:32–20.[1] He sought both a mandatory injunction ordering defendants to comply with the strictures of *N. J. S. A.* 17:22–6.14a—a request since rendered moot by agreement of the parties— and a declaration that pursuant to *N. J. S. A.* 39:6A–3 defendants could not retain their licenses should they cease renewing automobile policies due to business losses.

The latter statute provides, in pertinent part, that "[n]o licensed insurance carrier shall refuse to renew the required coverage stipulated by [the No-Fault Act] without the consent to the Commissioner of Insurance." Pursuant to his authority to promulgate "reasonable rules and regulations" to effectuate the purposes of the Act, *see N. J. S. A.* 39:6A–19, the Commissioner has adopted a regulation setting forth ten grounds for nonrenewal to which he consents. *N. J. A. C.* 11:3–8.1(e). In the Commissioner's view, none of the grounds sanctions nonrenewals due to falling profits.

Defendants' answer disputed the applicability of *N. J. S. A.* 39:6A–3 to the facts of this case. In their view, that provision was enacted solely to prevent discriminatory refusals

---

[1] *N. J. S. A.* 17:32–20 empowers the Commissioner to institute civil actions for injunctive or other appropriate relief against violators of the insurance laws.

to renew individual policies; it was not intended to prohibit the wholesale nonrenewal of all of a carrier's automobile policies due to business losses. Moreover, defendants asserted that the No-Fault Act must be read in conjunction with the Agency Termination Law, N. J. S. A. 17:22–6.14a, which, by implication, limits the insurer's obligation to renew under certain circumstances. Defendants also contended that as construed by the Commissioner, the No-Fault Act would ,(1) run afoul of the contract clauses of the federal and State constitutions; (2) violate due process; and (3) place an unconstitutional condition upon licensure. Finally, defendants maintain that the authority granted the Commissioner by N. J. S. A. 39:6A–3 constituted an undue delegation of legislative authority.

On April 18, 1978, there being no factual issues in dispute, the trial court granted summary judgment in favor of the Commissioner. *Sheeran v. Nationwide Mutual Insurance Co., Inc.*, 159 *N. J. Super*. 417 (Ch. Div. 1978). Holding that the statute and regulation "should be construed as written[,]" the trial judge concluded that defendants must relinquish their licenses should they refuse to renew their outstanding automobile policies. Each of the defendants' constitutional arguments was rejected,[2] and final judgment was entered enjoining defendants from violating the Act.

On appeal, the Appellate Division affirmed substantially for the reasons stated by the trial judge. *Sheeran v. Nationwide Mutual Ins. Co., Inc.*, 163 *N. J. Super*. 40 (App. Div. 1978). We granted defendants' petition for certification. 79 *N. J.* 477 (1979).

I

Before turning to the merits of the respective parties' contentions, we must comment upon the scope of the

---

[2]The contract clause claim, rejected by the trial court on the ground that the Act was in effect prior to all defendants' existing policies, is not pressed on appeal and hence will not be considered.

injunction issued below. The trial court judgment applies by its terms to "defendants," thereby indicating that both Nationwide and Nationwide Fire must comply with its proscriptions. During oral argument before this Court, however, the Commissioner conceded that the order can properly apply solely to Nationwide inasmuch as the No-Fault Act deals only with the conduct of automobile insurers and Nationwide Fire does not issue any policies of that nature.[3] Thus, irrespective of our interpretation of *N. J. S. A.* 39 :6A–3, the injunction entered with respect to the fire insurance company must be vacated.

## II

*N. J. S. A.* 39 :6A–3 provides that "[n]o licensed insurance carrier shall refuse to renew the required coverage stipulated by [the No-Fault Act] without the consent of the Commissioner of Insurance." The language of this provision is clear and unequivocal. Companies licensed to write automobile insurance may not refuse to renew except upon grounds acceptable to the Commissioner.

The Commissioner has, by regulation, provided ten grounds which are deemed to have his consent, *N. J. A. C.* 11 :3–8.1 (e). Nonrenewal can be based, *inter alia,* upon an insured's involvement in prior accidents, his violation of motor vehicle laws, his use of the car in professional racing, his physical or mental impairment, and his refusal to submit to a medical examination. Concededly, no provision allows the wholesale nonrenewal of all policies because the carrier is experiencing business losses.

Defendant[4] contends that despite this precise wording, the Legislature, in enacting *N. J. S. A.* 39 :6A–3, was concerned

---

[3]The trial court was perhaps misled by the use throughout the proceedings of the term "Nationwide" to refer to both entities.

[4]Inasmuch as Nationwide Fire has been eliminated from this case, the term "defendant" will be used throughout the remainder of this opinion to denote Nationwide Mutual Insurance Company.

solely with circumscribing a carrier's decisions not to renew individual automobile policies or classes of policies. Indeed, it argues that the Legislature did not even consider the propriety of allowing wholesale nonrenewals when adopting the No-Fault Act, and hence could not have intended the Act to prohibit general nonrenewals due to declining profits.

█ As the United States Supreme Court has stated in analogous contexts, "the meaning of a statute must * * * be sought in the language in which the act is framed, and if that is plain, * * * the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States,* 242 *U. S.* 470, 485, 37 *S. Ct.* 192, 194, 61 *L. Ed.* 442, 452 (1917); *see, e. g., Vreeland v. Byrne,* 72 *N. J.* 292, 302 (1977); *see generally* 2A Sutherland, *Statutory Construction,* § 46.01 (4th ed. 1973, C. D. Sands). Moreover, courts have generally agreed that where the Legislature has "made a choice of language which fairly brings a given situation within a statute, it is unimportant that the particular application may not have have been contemplated by the legislators." *Sears Roebuck & Co. v. United States,* 504 *F.* 2d 1400, 1402 (C. C. P. A. 1974); *see, e g., Barr v. United States,* 324 *U. S.* 83, 90, 65 *S. Ct.* 522, 525, 89 *L. Ed.* 765, 771 (1945). There is thus no room for judicial interpretation. *Vreeland v. Byrne, supra,* 72 *N. J.* at 302.

█ Notwithstanding these general rules of statutory construction, we have considered defendant's argument and find it unpersuasive. Although it may well be true that in enacting *N. J. S. A.* 39:6A–3 the Legislature was particularly concerned with the discriminatory cancellation of individual policies, it is clear that the issue of wholesale nonrenewals was also brought to its attention.

Testimony given during the public hearings which preceded the passage of the Act dealt on several occasions with questions concerning mass nonrenewals. In particular, several witnesses highlighted the problems which might ensue should insurance companies withdraw or threaten

to withdraw from the State because of alleged inadequacy of rates. *See* Public Hearings, *New Jersey Commission to Study Automobile Insurance Matters, Including a "No-Fault" Auto Accident Insurance Plan,* Vol. I at 69–70, 63A, Vol. II at 34 (March-April 1971). The Legislature must therefore be deemed to have been aware of these problems and to have acted in order to prevent their occurrence. Consequently, there is no warrant to rewrite the clear wording of the Act so as to exempt this particular defendant from its proscription.

Moreover, when read as a whole, the Act evinces a clear legislative intent that companies which choose to write automobile policies in this state maintain their fair share of coverage. In the words of Judge Greenberg at the trial level, insureds are to be accorded "the advantage of guaranteed renewals of indefinite duration with a particular company * * *." 159 *N. J. Super.* at 422. This intent would by and large be frustrated were we to rule that carriers can refuse to renew all of their existing policies and yet retain the ability to insure in the future those customers whom they consider desirable. Such an end run around the statutory scheme cannot be countenanced.[5]

Finally, defendant argues that *N. J. S. A.* 39:6A–3 must be read *in pari materia* with the Agency Termination Law, *N. J. S. A.* 17:22–6.14a,[6] which governs renewal rights of terminated agents. This contention is likewise unpersuasive. *N. J. S. A.* 17:22–6.14a is primarily concerned with the rights of insurance agents. Unlike the No-Fault Act, the protection which it affords to the insured public, although

---

[5] We also note that in reaching this conclusion we are supported by the interpretation of the Commissioner whose expertise in the area entitles his judgment to considerable weight.

[6] This statute provides, *inter alia*, a 90 day minimum notice for termination of agents and requires insurance companies to renew policies at the agents' request — and pay commissions thereon — during a nine month period following termination.

important, is only secondary. Moreover, the former Act, unlike the latter, specifically deals with automobile insurance. Consequently, it must be deemed controlling in the event of facial conflict with the generally applicable agency termination provision.

## III

### Constitutional Challenges

#### A. *Improper Delegation of Legislative Power*

 Defendant contends that *N. J. S. A.* 39:6A-3 is unconstitutional on grounds of undue delegation of legislative authority. In its view, the provision is faulty because the Legislature has failed to provide adequate standards to guide the Commissioner in exercising his discretionary consent to nonrenewal. We disagree.

The principles to be applied in reviewing legislative grants of authority were recently reiterated by Chief Justice Hughes in *Avant v. Clifford,* 67 *N. J.* 496 (1975). He there stated that

> there can be "no unconstitutional delegation of legislative authority as long as the administrative discretion is hemmed in by standards sufficiently definitive to guide its exercise," such standards *not necessarily being stated "in express terms if they may be reasonably inferred from the statutory scheme as a whole."*
>
> [67 *N. J.* at 553 (emphasis supplied)]

*See In re Berardi,* 23 *N. J.* 485 (1957); *Ward v. Scott,* 11 *N. J.* 117 (1952); *Ass'n of N. J. State Col. Fac. v. Bd. of Higher Ed.,* 112 *N. J. Super.* 237 (Law Div. 1970). Under this test the instant statute clearly passes constitutional muster.

 Although *N. J. S. A.* 39:6A-3 standing alone might appear to give the Commissioner untrammeled discretion in exercising his power to withhold consent, when the Act is considered as a whole, it is clear that his authority is sufficiently circumscribed. Under *N. J. S. A.* 39:6A-19, the

Commissioner is empowered to promulgate only *"reasonable rules and regulations"* in order to effectuate the purposes of the No-Fault Act (emphasis supplied). Thus, in deciding whether to withhold his consent, he must act reasonably in light of the policies underlying the Act. Among the factors which the Commissioner may be expected to consider are: unusual risks posed by a particular policyholder or class of policyholders, noncompliance by policyholders with the insurer's reasonable requests, and the public welfare. These standards render the statute immune from constitutional attack. *See, e. g., Avant v. Clifford, supra; Amalgamated Meat Cutters & Butcher Work v. Connally,* 337 *F. Supp.* 737 (D. D. C. 1971) (three-judge court).

B. *Due Process of Law*

■ Defendant maintains that *N. J. S. A.* 39:6A–3, as construed by the Commissioner, compels it to allocate its resources to a line of business against its will, thus depriving defendant of its property without due process of law. Its argument in this respect is misguided.

The No-Fault Act does not in any way deprive defendant of his property. Defendant is not required to write any automobile insurance policies in the state. All it need do is surrender its license.[7] It is well established that the insurance business is strongly affected with a public interest and therefore properly subject to comprehensive regulation in protecting the public welfare. *See, e. g., Saffore v. Atlantic Cas. Ins. Co.,* 21 *N. J.* 300, 310 (1956) ; *McCarter v. Firemen's Ins. Co.,* 74 *N. J. Eq.* 372 (E & A 1909) ; *California State*

---

[7] We note that defendant's argument is premised in large part upon the trial court having included both the automobile insurer and the fire insurance company within his order. Such a case might raise more substantial constitutional claims. *But see Baltimore & Ohio R. R. Co. v. United States,* 345 *U. S.* 146, 73 *S. Ct.* 592, 97 *L. Ed.* 912 (1953) ; *Maryland Cas. Co. v. Commissioner,* 363 *N. E.* 2d 1087 (Sup. Jud. Ct. Mass. 1977).

*Auto. Ass'n Inter-Ins. Bur. v. Maloney,* 341 *U. S.* 105, 71 *S. Ct.* 601, 95 *L. Ed.* 788 (1951). The No-Fault Act merely requires insurance companies which choose to write automobile policies to continue bearing their fair share of coverage. As such it is a reasonable regulation designed to meet the public need for continued insurance with guaranteed renewals and therefore is wholly constitutional. *See Saffore v. Atlantic Cas. Ins. Co., supra,* at 310.

█ Insofar as defendant's complaints are based upon the unprofitability of its automotive operations, the proper remedy lies not in challenging the renewal requirements. Rather, defendant should seek the Commissioner's approval for increased rates.[8] Clearly, defendant is entitled to a reasonable profit. *See Helmsley v. Fort Lee Bor.,* 78 *N. J.* 200 (1978), *cert.* den. —— *U. S.* ——, 99 *S. Ct.* 1782, 60 *L. Ed.* 2d —— (1979). Inability to obtain reasonable rates would, of course, justify judicial correction.

## C. *Unconstitutional Condition*

█ Defendant urges that forced compliance with the renewal requirement as a condition to licensure amounts to the imposition of an "unconstitutional condition" upon its right to do business within the state. Basically, it contends that *N. J. S. A.* 39:6A–3 is not rationally related to the purposes for which certificates to engage in business are granted. This claim must fail substantially for the reasons stated in the previous section. The obligation to renew is reasonably related to the protection of the insured public and as such can be required of all those who wish to transact the business of insuring automobiles within the state.[9] *See N. J. S. A.* 17:32–2.

---

[8]Indeed, at oral argument we were informed that subsequent to the initiation of this suit a request for higher rates had been granted.

[9]Here again defendant's argument rests in part upon the fact that the injunction issued against both insurers rather than merely the auto insurance company.

## Conclusion

For the foregoing reasons we hold that as long as defendant wishes to retain its license to transact automobile insurance sales within this state it remains subject to the renewal requirements of the No-Fault Act. Defendant may either surrender its license to write such insurance or continue to renew its policies as provided by law. The Appellate Division judgment is modified so as to exclude Nationwide Mutual Fire Insurance Company from its proscription. As modified, that judgment is affirmed.

MOUNTAIN, J., dissenting. It seems to me that the majority has taken a somewhat overly simplistic approach to the matter of statutory interpretation that is presented at the threshold of this case.

The statutory provision before us says simply,

No licensed insurance carrier shall refuse to renew the required coverage stipulated by this act without the consent of the Commissioner of Insurance. [N. J. S. A. 39:6A-3]

Read literally, Nationwide would seem to be bound to renew policies as long as it retains its license to issue automobile insurance in New Jersey. But as we have been told by high authority,

[t]here is no surer way to misread any document than to read it literally. [Guiseppi v. Walling, 144 F. 2d 608, 623, 624 (2d Cir. 1944) L. Hand, J. concurring]

We do not seek the literal meaning of the words of the statute and stop there. The intent and purpose of the Legislature must be sought. Such evidences of legislative intent as exist — and they are meager indeed — seem to support the view that the mischief which the statute sought to remedy was only the matter of discriminatory and arbitrary refusals to renew individual policies. For instance, after the enactment of the New Jersey Automobile Reparation Reform Act

(No Fault) *N. J. S. A.* 39:6A–1 *et seq.,* the legal counsel to the Automobile Insurance Study Commission, discussing the language here in question said:

> The purpose of the provision is to eliminate the practices which certain insurance companies follow, such as refusal to renew coverage once an insured reaches 65 years of age, or refusal to renew after an insured is involved in an accident wherein claim is made, regardless of who was at fault. Many automobile owners in the past have elected not to make legitimate claims with their insurers for fear that their insurers would refuse to renew their policies. In many instances such concern by the insured was warranted. The renewal provision of the Act should eliminate such practices of wholesale non-renewal of policies absent good cause. [M. Iaviocoli, *No Fault and Comparative Negligence in New Jersey,* 101–02 (1973)]

While the issue is not free from doubt, I cannot find any certain or positive evidence that the Legislature ever gave any thought or attention to the problem of wholesale withdrawal which has arisen here. This being so I would interpret the statute as being addressed only to renewals of individual policies and not pertinent to the situation which Nationwide presents.

Because I would decide the case in favor of Nationwide as a matter of statutory construction, I would not reach the constitutional issues presented.

I agree with the modification imposed by the majority and as so modified I would reverse.

*For affirmance as modified*—Chief Justice HUGHES and Justices SULLIVAN, PASHMAN, SCHREIBER and HANDLER—5.

*For reversal as modified*—Justice MOUNTAIN—1.